UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

FRANK O'BRYANT,

Defendant.

16 Cr. 0317-3 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from counsel seeking defendant Frank O'Bryant's

compassionate release from the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"),

pursuant to 18 U.S.C. § 3582(c), in light of the ongoing COVID-19 pandemic. Dkt. 716 ("Def.

Ltr."). The Government opposes this request. Dkt. 718 ("Gov't Ltr.").

As background, O'Bryant was a high-ranking member of the Low Rider Brims gang

("Low Rider Brims"), a set of the Bloods. *Id.* at 2. The narcotics and firearms charges against

him stemmed from a broader investigation into gang activity in the Diego Beekman Houses, a

private housing complex spanning six blocks in the Bronx, in which gangs, including the Low

Rider Brims, and their affiliates engaged in trafficking narcotics, robberies, assaults, and

shootings. *Id.* at 1. O'Bryant has been detained since his arrest on July 26, 2016. *See* Dkt. 75;

Dkt. 363 at 3.

On December 14, 2016, O'Bryant pled guilty before the Honorable Katherine B. Forrest,

former U.S. District Judge for the Southern District of New York, to whom this case was then

assigned, to participating in a conspiracy between 2010 and 2016 to distribute and possess with

the intent to distribute 280 grams and more of cocaine base (Count One), and other drugs, and to

possessing a firearm in furtherance of that conspiracy (Count Two). Under the plea agreement,

O'Bryant pled guilty to lesser-included offenses within the scope of both counts: the narcotics

plea, to violating 21 U.S.C. §§ 841(b)(1)(C) and 846, did not carry a mandatory minimum

sentence, and the firearms possession count, which charged a violation of 18 U.S.C. § 924(c),

carried a five-year mandatory minimum sentence. Gov't Ltr. at 2–3; Def. Ltr. at 3. The parties

stipulated that O'Bryant's offense level on Count One was 23 and that he was in criminal history

category III, yielding a Guidelines range of 57–71 months' imprisonment, to be followed by a

mandatory consecutive 60-month sentence on Count Two. The Guidelines range was therefore,

effectively, 117–131 months' imprisonment. Gov't Ltr. at 2. On April 13, 2017, Judge Forrest

sentenced O'Bryant to 120 months' imprisonment, to be followed by five years' supervised

release. *See* Dkt. 392 ("Tr.") at 12; Dkt. 365 (judgment).

In July 2020, while imprisoned at FCI Jesup, O'Bryant tested positive for COVID-19.

*See* Dkt. 716-3 at 5. In June or July 2020, he filed a request for compassionate release with FCI

Jesup's Warden, citing his parents' and children's needs for him as a caregiver. *See id.* at 15

(undated); Gov't Ltr. at 4 (June 8, 2020); Def. Ltr. at 7 (July 2020). On July 31, 2020, the

Warden denied the request. Dkt. 716-3 at 17.

On October 8, 2021, the Court received O'Bryant's compassionate release motion, Def.

Ltr., along with a memorandum of law, Dkt. 716-1, and exhibits in support, Dkts. 716-2, 716-3.

On October 26, 2021, the Government opposed the motion. Gov't Ltr. The Government argues,

at the threshold, that certain arguments made in O'Bryant's motion are not properly before the

Court because he failed to raise them before the Bureau of Prisons ("BOP"). *See id.* at 6–7. The

Court need not resolve that issue, however, because, even considering all arguments, a reduction

of O'Bryant's sentence would not be warranted for two independent reasons. First, O'Bryant has

not shown extraordinary and compelling reasons justifying his early release; and second, the § 3553(a) factors, assessed today, do not favor early release.

Under section 3582(c)(1)(A), "upon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings and instead required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. Accordingly, the Second Circuit has held that U.S.S.G § 1B1.13 "is not applicable to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal

quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought directly by an imprisoned defendant rather than by the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Upon careful review of O'Bryant's application, the Court finds that a reduction in his sentence is not warranted for two reasons.

First, O'Bryant has not demonstrated that extraordinary and compelling circumstances warrant his release. The Court commends O'Bryant for his good behavior and completion of educational and training courses during his incarceration. *See* Dkt. 716-1 at 10–14. The Court also recognizes the difficulty of his being separated from his children, *id.* at 13, and takes note of the moving letter submitted by O'Bryant's fiancée, Nadine L. Meekins, *see* Dkt. 716-3 at 2–3. But the transcript of O'Bryant's sentencing reflects that, in fashioning a sentence, Judge Forrest already took into account O'Bryant's role as a "good dad" and "a loved and beloved person in [his] family," and his involvement in his children's lives. Tr. 25. In any event, O'Bryant has not shown that these circumstances in his life are so extraordinary or compelling compared to other incarcerated persons to justify early release. *See* Gov't Ltr. at 7–8; *see, e.g., United States v. Fiseku*, No. 14 Cr. 384-1 (PAE), 2020 WL 7695708, at *4 (S.D.N.Y. Dec. 28, 2020) (prolonged

separation from his family or inability to attend to their needs did not differentiate defendant from other prisoners).

To the extent O'Bryant relies on his August 2008 spleen removal after an incident in which he sustained multiple gunshot wounds, *see* Dkts. 716-1, 716-3 at 9–13, this circumstance, too, does not qualify as extraordinary or compelling.  It was known at the time of O'Bryant's original sentencing, and O'Bryant has not shown that COVID-19 presents a heightened risk to him on account of the lack of a spleen.  The Centers for Disease Control has not designated lack of spleen as a COVID-19 risk factor, Gov't Ltr. at 7, and O'Bryant's arguments about heightened COVID-19 risks post-splenectomy are unsupported by citations, *see* Def. Ltr. at 1; Dkt. 716-1 at 10.

Further, as the Government notes, O'Bryant received the Johnson & Johnson/Janssen COVID-19 vaccine on approximately May 19, 2021, after initially refusing the Moderna vaccine.  Gov't Ltr. at 4, 7.  A year earlier, O'Bryant had COVID-19 and recovered.[1]  *Id.* at 7; Dkt. 716-3 at 5.  Moreover, although the experience of COVID-19 in federal prisons is not to be

---

[1] O'Bryant's experience with COVID-19 does not appear to have been extreme.  As to some symptoms that counsel states that Bryant experienced—including chills, tiring easily, fatigue, fever, occasional high-fever with chills, fever lasting more than one week, hypersomnolence, constant cough, insomnia, night sweats, unexplained weight loss, and weakness—O'Bryant's Health Services Clinical Encounter Report taken July 17, 2020, the day after he tested positive for COVID-19, checks "No" and/or does not otherwise reflect such symptoms.  *See* Dkt. 716-3 at 5–6.  *Compare with id.* ("Yes: Dyspnea, Pleurisy, Shortness of breath (Triggers?: COVID 19)").  At the time of that appointment, O'Bryant, then age 33, had a temperature of 97.2 degrees, was alert and oriented, had clear lungs, and did not require supplemental oxygen.  *Id.* at 6–7.  BOP ordered a chest x-ray and prescribed acetaminophen and prednisone to deal with bronchitis symptoms.  *Id.* at 7.  Although COVID-19 by its nature is a serious illness, the record does not reflect that at the time O'Bryant contracted it, which was more than a year before he filed the pending compassionate release motion, he faced greater risk from it than the average inmate.  Nor does O'Bryant suggest or show that the BOP's treatment of his COVID-19 was inadequate or that his having had COVID-19 materially compromises his health today.

minimized, O'Bryant has not described conditions at FCI Jesup, whether occasioned by the pandemic or other circumstances, that are materially worse than those faced by other prisoners in federal custody. *See, e.g.*, *United States v. Gonzalez-Casillas*, No. 07 Cr. 527-1 (PAE), 2022 WL 446011, at *4 (S.D.N.Y. Feb. 11, 2022) (denying release request where inmate had not shown himself more vulnerable to COVID-19 than average inmate at his facility, had previously contracted virus and recovered, and had been vaccinated). *Compare* Gov't Ltr. at 4 (noting that, at time of the Government's submission, the FCI Jesup facility had no positive COVID results among inmates or staff),[2] *with Fiseku*, 2020 WL7695708, at *3.

In any event, even assuming that O'Bryant were at a higher risk than the average inmate, the Court cannot find that he "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The underlying conduct that led to O'Bryant's sentence in this case gravely endangered the safety of the community. As a member of the Low Rider Brims gang, O'Bryant trafficked narcotics, primarily crack, and he admitted on a consensual recording in 2015 that he possessed multiple firearms. Gov't Ltr. at 2. Troubling, too, O'Bryant was previously arrested for assaulting a security guard at the Beekman Houses, the same housing complex where the Low Rider Brims sold narcotics. *See* Tr. 31–32; Gov't Ltr. at 1.

Second, even assuming that O'Bryant had identified extraordinary and compelling circumstances, the § 3553(a) factors, considered in totality, do not support a reduction in the original sentence. Two such factors, to be sure, are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). The Court will assume, *arguendo*, that these tended to favor early release.

---

[2] O'Bryant notes that another inmate, Kevin Gayles, died while incarcerated at FCI Jesup. *See* Dkt. 716-1 at 10 n.7. But O'Bryant does not explain Gayles's medical circumstances or why they suggest heightened risk for O'Bryant. *Id.*

Nonetheless, these are outweighed by the combined force of several other factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense[,] . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2).

For the reasons she set out in detail at the sentencing, Judge Forrest reasonably found a sentence in the range of 120 months' imprisonment necessary to achieve those goals.[3] Judge Forrest focused on the seriousness of O'Bryant's crime, pointing to the extended nature of his involvement, *see* Tr. 23, "the fact that [O'Bryant] was one of the people who had firearms in connection [with the narcotics trafficking conspiracy]," *id.*, and the "particularly destructive" nature of the "highly addictive" narcotics the conspiracy sold to its community, *id.* at 27–28. She also found the sentence imposed appropriate to accomplish specific deterrence, given O'Bryant's failure to learn from his prior arrest for selling marijuana and his assault conviction, *see* Tr. 29–30 ("[Y]ou should have learned from the [prior] arrest."); she expressed particular concern about the danger O'Bryant posed to the public, citing his prior violence, *see* Tr. 29, 31, and the damage that narcotics inflicted on the community, *id.* at 13–14 ("[T]hat's an important factor to consider."); *see also id.* at 26–27. Converting O'Bryant's sentence to time served, *see* Dkt. 716-1 at 16, when he has served approximately six years of a 10-year term of incarceration, *see* Def. Ltr. at 14 & n.8, would disserve these § 3553(a) factors. *See, e.g., Fiseku*, 2020 WL 7695708, at *1 (denying compassionate release where defendant served only 60% of sentence);

---

[3] Insofar as O'Bryant argues that he would be a candidate for relief under pending legislation that would recalibrate the crack and powder cocaine sentencing guidelines, *see* Dkt. 716-1 at n.3, Judge Forrest stated at sentencing that the 120-month sentence was proper "irrespective of the mandatory minimum and irrespective of the guidelines," Tr. 34.

*United States v. Kornegay*, No. 13 Cr. 428 (PAE), 2020 WL 7079412, at * 5 (S.D.N.Y. Dec. 3, 2020) (denying compassionate release for a defendant who had served more than half of his sentence); *United States v. Francisco*, No. 19 Cr. 131 (PAE), 2020 WL 3507958, at *3 (S.D.N.Y. June 29, 2020) (denying compassionate release where defendant had served only 60% of his sentence).

Accordingly, finding that the § 3553(a) factors do not support a reduction of sentence, the Court denies O'Bryant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: November 22, 2022
New York, New York

8