UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

FRANK O'BRYANT,

Defendant.

---

16 Cr. 0317-3 (PAE)

OPINION AND ORDER

PAUL A. ENGELMAYER, District Judge:

On November 22, 2022, the Court denied a counseled motion by defendant Frank O'Bryant pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release from the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"). The Court found that O'Bryant had not established either an extraordinary and compelling basis for a reduction in sentence or that the 18 U.S.C. § 3553(a) factors supported such relief. *See* Dkt. 736 ("11/22/22 Dec'n"). O'Bryant has now moved again, this time *pro se*, for the same relief. Dkt. 777 ("Mtn."). The Government opposes the motion. Dkt. 782 ("Opp."). For the reasons that follow, the Court denies the motion.

I.  **Background**[1]

O'Bryant was a high-ranking member of the Low Rider Brims gang ("Low Rider Brims"), a set of the Bloods. Dkt. 718 at 2. The narcotics and firearms charges against him stemmed from a broader investigation into gang activity in the Diego Beekman Houses, a private housing complex spanning six blocks in the Bronx, in which gangs, including the Lower Rider

---

[1] In light of the overlap between O'Bryant's successive motions, the initial background that follows is drawn from the Court's November 22, 2022 decision.

Brims, and their affiliates engaged in trafficking narcotics, robberies, assaults, and shootings. *Id.* at 1. O'Bryant has been detained since his arrest on July 26, 2016. *See* Dkt. 75; Dkt. 363 at 3.

On December 14, 2016, O'Bryant pled guilty before the Honorable Katherine B. Forrest, to whom this case was at that point assigned, to participating in a conspiracy between 2010 and 2016 to distribute and possess with the intent to distribute crack cocaine (Count One), and to possessing a firearm in furtherance of that conspiracy (Count Two). Dkt. 273 at 11–12. Under the plea agreement, O'Bryant pled guilty to lesser included offenses within the scope of both counts of his indictment: the narcotics count, which charged a violation of 21 U.S.C. § 841(b)(1)(C) and § 846, did not carry a mandatory minimum sentence; the firearms possession count, which charged a violation of 18 U.S.C. § 924(c), carried a five-year mandatory minimum sentence. Dkt. 718 at 2–3; Dkt. 716 at 3. The parties stipulated that O'Bryant's offense level on Count One was 23 and that he was in criminal history category III, yielding a guidelines range of 57–71 months imprisonment, to be followed by a mandatory consecutive 60-month sentence on Count Two. Dkt. 718 at 2–3. The Guidelines range was therefore, effectively, 117–131 months imprisonment. *Id.* at 2. On April 13, 2017, Judge Forrest sentenced O'Bryant to 120 months' imprisonment, to be followed by five years' supervised release. *See* Dkt. 392 at 33–34 ("Tr."); Dkt. 365 (judgment).

In July 2020, while imprisoned at FCI Jesup, O'Bryant tested positive for COVID-19. *See* Dkt. 716-3 at 5. In June or July 2020, he filed a request for compassionate release with FCI Jesup's Warden, citing his parents' and children's need for him as a caregiver. *See* Dkt. 716-3 at 15 (undated); *compare* Dkt. 716-1 ("Mem.") at 7 (describing July 2020 as filing date), *with* Dkt. 718 ("10/26/21 Opp.") at 4 (describing June 8, 2020 as filing date). On July 31, 2020, the Warden denied the request. Dkt. 716-3 at 17.

2

On October 8, 2021, the Court received O'Bryant's counseled compassionate release motion, Dkt. 716 ("10/8/21 Mtn."), along with a memorandum of law, ("Mem."), and exhibits in support, Dkts. 716-2, 716-3. On October 26, 2021, the Government opposed the motion. 10/26/21 Opp.

In an order issued on November 22, 2022, the Court denied O'Bryant's motion, for two independent reasons.

First, the Court held, O'Bryant had not shown extraordinary and compelling reasons justifying his early release. 11/22/22 Dec'n at 4–5. The Court acknowledged O'Bryant's good behavior and completion of courses while incarcerated, his difficult separation from his children, and a letter submitted by his fiancée, Nadine L. Meekins. But, the Court noted, in fashioning a sentence, Judge Forrest had already considered O'Bryant's role in his family, and O'Bryant had not shown that his life circumstances are sufficiently extraordinary or compelling compared to other incarcerated persons to justify early release. *Id.* (docket and case citations omitted). The Court also found O'Bryant's August 2008 spleen removal following a shooting incident not to qualify as extraordinary or compelling, as it had been known at the time of sentencing and as O'Bryant had not demonstrated that COVID-19 presented a heightened risk to him on account of the lack of a spleen. *Id.* at 5 (docket citations omitted). And, as to COVID-19, the Court noted, O'Bryant had been vaccinated, after having recovered from a non-extreme case of COVID-19, *id.* at 5–6 & n.1, and O'Bryant had not shown that conditions in FCI Jesup were unusual, *id.* at 6 (docket and case citations omitted). In any event, even assuming O'Bryant had shown himself at a higher risk than the average inmate, the Court held it could not find that he "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2). The Court explained:

> The underlying conduct that led to O'Bryant's sentence in this case gravely endangered the safety of the community. As a member of the Low Rider Brims gang, O'Bryant trafficked narcotics, primarily crack, and he admitted on a consensual recording in 2015 that he possessed multiple firearms. Troubling, too, O'Bryant was previously arrested for assaulting a security guard at the Beekman Houses, the same housing complex where the Low Rider Brims sold narcotics.

11/22/22 Dec'n at 6 (docket citations omitted).

Second, the Court held, even assuming that O'Bryant had identified extraordinary and compelling circumstances, the § 3553(a) factors, in totality, did not support a sentence reduction. *Id.* at 6–8. The Court assumed *arguendo* that the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care," 18 U.S.C. § 3553(a), favored early release. But the Court found these outweighed by the combined force of several other factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *Id.* The Court explained:

> For the reasons she set out in detail at the sentencing, Judge Forrest reasonably found a sentence in the range of 120 months' imprisonment necessary to achieve those goals. Judge Forrest focused on the seriousness of O'Bryant's crime, pointing to the extended nature of his involvement, "the fact that [O'Bryant] was one of the people who had firearms in connection [with the narcotics trafficking conspiracy]," and the "particularly destructive" nature of the "highly addictive" narcotics the conspiracy sold to its community. She also found the sentence imposed appropriate to accomplish specific deterrence, given O'Bryant's failure to learn from his prior arrest for selling marijuana and his assault conviction; she expressed particular concern about the danger O'Bryant posed to the public, citing his prior violence, and the damage that narcotics inflicted on the community. Converting O'Bryant's sentence to time served, when he has served approximately six years of a 10-year term of incarceration, would disserve these § 3553(a) factors. *See, e.g., Fiseku*, 2020 WL 7695708, at *1 (denying compassionate release where defendant served only 60% of sentence); *United States v. Kornegay*, No. 13 Cr. 428 (PAE), 2020 WL 7079412, at * 5 (S.D.N.Y. Dec. 3, 2020) (denying compassionate release for a defendant who had served more than half of his sentence); *United States v. Francisco*, No. 19 Cr. 131 (PAE), 2020 WL 3507958, at *3 (S.D.N.Y. June 29,

4

2020) (denying compassionate release where defendant had served only 60% of his sentence).

*Id.* at 7–8 (docket citations, footnote, and quotations omitted).[2]

On October 17, 2023, O'Bryant filed the instant motion for compassionate release. The motion is based on O'Bryant's representations that Ms. Meekins, whom he says is now his wife, "has become incapacitated" and that he is "the only available caregiver for [his] spouse." Mtn. at 4. O'Bryant represents that Ms. Meekins "is unable to self care," that she "use[s] a walker and takes medication for her injuries," and that she lives alone." *Id.* at 5. O'Bryant attaches a marriage certificate from the State of Kansas that reflects that he and Ms. Meekins were married on or about August 18, 2022. *Id.* at 29. He also attaches a letter from Ms. Meekins, *id.* at 22–23, and her medical records, *id.* at 31–53. O'Bryant represents that he filed a request for compassionate release with the Bureau of Prisons ("BOP") on this ground on July 23, 2023, *id.* at 3. However, in his motion, he did not attach documentation to support that claim, and the Government reports that BOP's regional counsel reported having no record of receiving such a request. Opp. at 2 n.3.

## II. Discussion

The Court first reviews the legal standards governing compassionate release motions, which have changed—although not in a manner dispositive here—since the Court's decision denying O'Bryant's initial compassionate release motion, and then applies the standards.

### A. Standards Governing Compassionate Release Motions

---

[2] The Court also rejected O'Bryant's related argument that he would be a candidate for relief under then-pending legislation that would recalibrate the crack and powder cocaine sentencing guidelines. The Court noted Judge Forrest's statement at sentencing that the 120-month sentence was proper "irrespective of the mandatory minimum and irrespective of the guidelines." 11/22/22 Dec'n at 7 n.3 (docket citations omitted).

5

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts'

6

discretion to consider whether any reasons [were] extraordinary and compelling" in such cases. *Id.*; *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (November 1, 2023).

7

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury, "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support a sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up)

- *Unusually long sentence plus change in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Application to O'Bryant's Motion

8

The Court denies O'Bryant's motion for three independent reasons.

First, O'Bryant has not provided any evidentiary support for his claim to have filed a request for compassionate release with the BOP on the ground he now pursues. And the BOP has not found a record of any such request. On the record before it, the Court cannot find that O'Bryant has exhausted his administrative remedies, and therefore cannot consider his motion. *See, e.g., United States v. Guzman*, No. 11 Cr. 514 (CM), 2023 WL 4863454, at *3 (S.D.N.Y. July 31, 2023) (denying compassionate release motion for failure to exhaust administrative remedies because defendant failed to attach proof of submission of request for compassionate release to warden and BOP stated it had no record of such submission); *United States v. Board*, No. 16 Civ. 3259 (DRH), 2022 WL 2079742, at *7 (E.D.N.Y. June 9, 2022) (denying compassionate release motion for failure to exhaust administrative remedies because defendant had not adduced evidence that warden received defendant's compassionate release request); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 Wl 1876300, at *1 (S.D.N.Y. Apr. 14, 2020) (denying compassionate release motion because defendant failed to exhaust administrative remedies).

Second, the Court cannot find that Ms. Meekins' various physical ailments present an extraordinary and compelling reason sufficient to justify O'Bryant's early release. To be sure, the Sentencing Commission's amended guidance recognizes that where the defendant is the only available caregiver for a family member, such may supply a basis for compassionate release. See U.S.S.G. § 1B1.13(b)(3). And the materials O'Bryant has attached to his motion adequately document the ailments experienced by Ms. Meekin, today age 50. These include a letter from Ms. Meekins, Mtn. at 22–23, and her medical records, the 2023 portions of which report her degenerative disc disease, back and neck pain, and left arm weakness, and use of a walker, *id.* at

9

30–34.³ However, these materials, while establishing Ms. Meekins' pain and reduced mobility, do not establish that she is incapable of caring for herself. As the Government notes, an August 2023 letter from her doctor addressing work restrictions indicates that she is capable of working provided that she does not lift more than 10 pounds and that, if using a keyboard, she take rest breaks every 15 minutes. *Id.* at 30; *see also id.* at 29 (noting that Ms. Meekins apparently travelled from North Carolina to Kansas in August 2022 to marry O'Bryant). And the letters from O'Bryant, *id.* at 16–17, and Ms. Meekins, *id.* at 22–23, do not establish that others (family, friends, neighbors) are unavailable to assist Ms. Meekins with the tasks (*e.g.*, lifting objects weighing 10 or more pounds) that she is incapable of doing.

On the factual record, the Court is also compelled to view with skepticism O'Bryant's statement, with respect to Ms. Meekins, that "I am her only primary caregiver," *id.* at 16, and Ms. Meekins's similar statement, *see id.* at 22 (terming O'Bryant her "primary care giver"). Read as statements of present fact as opposed to statements of future intention, these statements are demonstrably false. O'Bryant has been in federal jail or prison since July 2016. His presentence report, dated March 2017, does not mention Ms. Meekins; it describes him as single; identifies a different woman, Vanessa Delgado, as his girlfriend, *see* Dkt. 314 at ¶ 70; and identifies two women—Delgado and Shena Seda—as the mothers of his two children, *see id.* at ¶¶ 66–68. Ms. Meekins' name first appeared on the docket of this case at the time of O'Bryant's 2021 application for compassionate release, in support of which Ms. Meekins submitted a letter describing herself as O'Bryant's fiancée. Dkt. 716-3. Given O'Bryant's prolonged custodial status and the absence of any indication that he had so much as met Ms. Meekins beforehand, he

---

³ O'Bryant also includes medical records of Ms. Meekins from 2014 and 2021, *id.* at 36–53, which chronicle her earlier reports of such symptoms and earlier diagnosis of degenerative disc disease.

10

does not appear ever to have functioned—or even to have been at liberty to function—as her caregiver. Under these circumstances, crediting O'Bryant's pledge to take up a caregiving role upon his early release would require a leap of faith. Granting early release based on an inmate's pledge to care for an ailing person whom he had first met and married while incarcerated would also raise obvious moral hazards. These are not overcome by O'Bryant's sparse factual showing here.

Third, even if Ms. Meekins' physical needs presented an extraordinary and compelling reason for release, his release would be inconsistent with the § 3553(a) factors, viewed as a whole. As to this point, the Court incorporates by reference its analysis of a year ago in denying O'Bryant's initial compassionate release motion. *See* 11/22/22 Dec'n at 7–8.

## CONCLUSION

For the reasons above, the Court denies O'Bryant's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is respectfully requested to terminate the motion at docket 777.

SO ORDERED.

                                                                     PAUL A. ENGELMAYER
                                                                     United States District Judge

Dated: December 6, 2023
       New York, New York